**In re GULF OVERSEAS SERVICE CORPORATION (ID # 74–1784329), Debtor.**

**GLAZER STEEL CORPORATION, Plaintiff,**

**v.**

**William C. SANDOZ, and Gulf Overseas Service Corporation, Defendants.**

**Bankruptcy No. B76–1528–L.**

United States Bankruptcy Court, W. D. Louisiana, Lafayette Division.

Feb. 29, 1981.

Landry, Watkins & Bonin, Jacob D. Landry, New Iberia, La., for Glazer Steel Corp.

Amato & Creely, Jacob J. Amato, Jr., Gretna, La., for Steel, Inc.

Burton E. Cestia, Jr., New Iberia, La., for James P. Cross.

John W. Hutchison, Lafayette, La., for trustee, William C. Sandoz and Gulf Overseas Corp.

## OPINION

RODNEY BERNARD, Jr., Bankruptcy Judge.

This matter comes before the court upon the complaints of Glazer Steel Corporation and Steel, Inc., claiming privileges for materials, and upon intervener's complaint filed by James P. Cross, Jr., claiming a labor and materialman's privilege. First City National Bank, by way of an "Answer" has intervened to protect its rights as an alleged mortgagee of certain vessels. All matters having been consolidated, trial was held at Opelousas, Louisiana on June 13, 1978.

This is a contest between a mortgage creditor, First City National Bank, on the one hand and Glazer Steel Corporation and Steel, Inc., material suppliers, and James P. Cross, a labor and materialman claimant on the other, seeking the proceeds of the sale of two vessels.

The debtor, Gulf Overseas Service Corporation, hereinafter referred to as G.O.S.C., was engaged in the operation of a shipyard at the Port of New Iberia. In early 1976 it sought funds from FCNB (First City National Bank) for the construction of two oceangoing barges, hereafter referred to as GM 290 and GM 291. As a result of this application two "collateral chattel and ship mortgage assignments and pledges" were confected in order to secure future advances to cover costs of construction of the barges. The mortgage which described that which was to become GM 290 was dated April 5, 1976 and filed for record in Iberia Parish on April 26, 1976. The mortgage dated July 13, 1976 and recorded in Iberia Parish on July 30, 1976 described that which was to become GM 291.

As a result of these mortgages FCNB advanced the sums of $1,250,000.00 for the construction of GM 290, and $750,000.00 for the construction of GM 291. Following completion of the barges they were sold by the Chapter XI Receiver and portions of the purchase prices were paid over to FCNB leaving balances due on the above mortgages in the sums of $358,168.49 and $338,-304.52 respectively.

During the months of April and May, 1976 Glazer (Glazer Steel Corp.) sold and delivered steel to G.O.S.C. and billed the debtor $138,977.13 therefor. This steel was for the construction of the barge, GM 290. During July of 1976 Glazer sold, delivered to, and billed G.O.S.C. for steel in the amount of $9,991.01. This steel was for the construction of GM 291. These sales and deliveries of steel are the basis for Glazer's alleged privilege.

During April and May, 1976 Steel, Inc. sold and delivered steel to G.O.S.C. for the construction of GM 290, billing G.O.S.C. $54,496.15 therefor. This is the basis for Steel, Inc.'s claim of privilege.

The claim of James Cross, Jr. is based upon charges for use of a crane with operator for the months of April through Sep-

tember, 1976 for which Cross billed G.O.S.C. the sum of $27,021.59. Cross alleges that he has a labor and materialmans privilege against GM 290 and GM 291 since the crane was used in their construction.

## THE MORTGAGES

When FCNB agreed to make the loans for construction of GM 290 and GM 291 it sought to secure these loans by means of two security devices captioned "Collateral Chattel and Ship Mortgage, Pledge and Assignment".

Prior to the passage of the Louisiana Chattel Mortgage Law of 1912, "ships and other vessels" were susceptible to mortgage by virtue of Article 3289 of the Louisiana Civil Code. Since, prior to that time, the chattel mortgage was unknown in Louisiana, the conventional real mortgage was used for securing loans on ships. After the chattel mortgage law was passed this form of security device was used for the mortgage of ships, no contention being made that ships and other vessels were anything but movable property.

In 1975 the Louisiana Legislature saw fit to provide a means of financing the construction of ships by passing the Ship Mortgage Law which defines "Ship" under R.S. 9:5522(b) as "a tug, pushboat, pullboat, barge, dredge, or other vessel or watercraft of more than fifty tons gross weight to be constructed within the state of Louisiana." The wording of the statute does not preclude the use of any other type of security device for the aforementioned purpose. It does, however, by its definition of "ship" preclude its use in the construction of a vessel or watercraft of less than fifty tons gross weight. Further it specifies by its definition of "ship" that such a mortgage is to be used only in the construction of a ship. The foregoing leads to the conclusion that the Louisiana chattel mortgage may still be utilized in mortgaging completed ships, regardless of size, as well as for financing the construction of ships of less than fifty tons gross weight. The unanswered question, at this point, is whether or not the Louisiana Chattel mortgage may be used for financing the construction of ships of more than fifty tons gross weight.

In confecting its mortgages FCNB utilized a hybrid security device melding the Louisiana chattel mortgage with the ship mortgage. The validity of this device requires statutory interpretation since the rights of competing lien creditors differ, dependant upon a finding of which statute, or whether both statutes, apply.

## THE PRIVILEGES

The Louisiana Civil Code Article 3237 confers a privilege on the price of ships and other vessels in favor of certain creditors. That Article reads, in part, as follows:

"The following debts are privileged on the price of ships and other vessels, in the order in which they are placed: . . . . . . . .

8. Sums due to sellers, to those who have furnished materials and to workmen employed in the construction, if the vessel has never made a voyage;"

No claims of privilege for debts due in the nature of those enumerated under 1 thru 7 have been made therefor no other privilege exists which would prime the materialmen and labor claimants.

Glazer and Steel, Inc. claim privileges for steel delivered to G.O.S.C. for the construction of GM 290 and 291. James P. Cross, Jr., a contractor, claims a privilege for labor performed in the construction of both vessels. Such privileges are clearly granted by the Code. Whether or not they exist in this case depends upon the proven facts. If they do exist, whether or not they prime the bank's mortgage depends upon the validity and type of mortgage held by the bank.

## CONCLUSION

FCNB has sought the best of both worlds by naming its mortgages, "Collateral Chattel and Ship mortgage . . . . ." Can they be both? To answer this question we must look to the actual provisions of the mortgages for there is a principle of law, requiring no citation, which provides that a

contract will be construed, not with reference to what the parties call it but with reference to its actual provisions. Both of the mortgages under consideration contain identical provisions which give insight as to the law under which the contract is to be construed. In the descriptions of the mortgaged property there appears this language, ".... together with all work, materials, components and fabrications (as defined in the Ship Mortgage Law of the State of Louisiana [Louisiana Statute 9:5521 et seq hereinafter referred to simply as the "Ship Mortgage Law"]) ...

Again, paragraph 11 of both mortgages contains this language,

"11. Mortgagor does further expressly covenant and agree; (a) that it has assigned a Hull Number to the Barge; (b) that it will affix a plaque showing the name of Mortgagor, the Hull Number and the Parish in which the Barge is to be constructed, to the keel if the Barge has a keel or to the bottom plates if the Barge does not have a keel so as to be clearly visible at all times during the performance of work and until the decking is laid and at such time as the decking is laid the aforementioned plaque shall be removed and permanently affixed to the weather deck so as to be clearly visible at all times during construction of said Barge; (c) that it will mark or stamp all materials comprising the mortgaged property with the Hull Number of the Barge upon the delivery of such materials to the shipyard; (d) that it will mark or stamp all components with the Hull Number of the Barge upon commencement of the fabrication thereof; (e) that the Hull Number assigned to the Barge is identical to the Hull Number assigned to said Barge in accordance with the Contract of March 4, 1976, as amended, as hereinabove referred to; and (f) that Mortgagor will otherwise comply with all requirements of the Ship Mortgage Law".

The foregoing provision incorporates the provisions of section 9:5523 of the Ship Mortgage Law and places the burden on the mortgagor to "otherwise comply with *all*

requirements of the Ship Mortgage Law". (Emphasis added)

Finally, paragraph 9 of both, mortgages is an assignment to FCNB of the contracts under which the vessels were built. The contract for construction dated March 4, 1976, and assigned to the bank in the assignment of April 5, 1976 and the contract dated June 14, 1976, assigned July 13, 1976 contain identical language in Article XXII of the former and Article XXI of the latter. These articles read as follows:

"As an inducement to any prospective Lender or Lenders (The "Lender") to make loans and advances to Builder for use by Builder in satisfaction of its obligations hereunder, both Builder and Owner expressly and for the benefit of any such Lender acknowledge the applicability of the provisions of the Ship Mortgage Law of the State of Louisiana (Louisiana revised Statutes 9:5221 ET SEQ) to any mortgage, lien, or privilege affecting the vessel which may be given by Builder as security for any such loan or loans.

Provided, however, that such loan shall in no case exceed the sum of $1,250,000.00 and provided further that any such mortgage, lien or privilege affecting the vessel shall be fully cancelled at or before delivery of the vessel to Owner.

In the event Builder executes any mortgage covering the vessel, materials or components, Builder agrees to immediately provide Owner in writing of the identity of each such mortgager, the amount and/or nature of the vessel, materials or components mortgaged and the stated value thereof.

In connection with the foregoing Builder agrees to take such action to affix such plaque or plaques, to mark or stamp all work, material, components and fabrications (as defined in the aforesaid Ship Mortgage Law) which will form a part of the vessel as specifically required by Louisiana Revised Statutes 9:5523 and otherwise to do and perform any and all such other acts or things as may be required or directed to fully comply with the provi-

sions of the said Ship Mortgage Law to the end that any mortgage, lien, privilege or other encumbrances given, offered or made by Builder to any such Lender and affecting the said vessel, work, materials, components or fabrications be fully valid and effective as compliance with the aforesaid Ship Mortgage Law".

These articles are the authority, and the only authority, by which G.O.S.C. could grant a mortgage on the vessel to FCNB. The bank was fully aware of the content of the contracts assigned to it.

Were the foregoing insufficient reason to hold that the mortgages in question are not chattel mortgages but are in fact, ship mortgages requiring the decision in this case to turn upon the provisions of the Ship Mortgage Law, there is no escape from the basic rule of statutory interpretation that in matters of conflict or inconsistency the later legislation supersedes the earlier.

■ The importance of this conclusion is that, as aforementioned, the rights of competing creditors claiming privileged debts are different when in competition with a chattel mortgage than they are when in competition with a ship mortgage. A ranking problem involving the former competition is governed by a chronological order of events, the chattel mortgage being effective from the date of its recordation and priming all ensuing encumbrances. When there is competition between a ship mortgage and certain privileged creditors, the provisions of R.S. 9:5528 prevail. This statute provides:

"Every mortgage of a ship shall be effective as against third persons from the time of filing in the proper offices, and the filing shall be notice to all parties of the existence of the mortgage, which shall be superior in rank to any privilege or preference arising subsequent thereto, but nothing contained in this Chapter shall affect any rights or privileges granted by law to sellers, laborers, and suppliers of materials in the construction of the ship or to the builder."

The language is quite clear. When the creditors are *sellers, laborers* and *suppliers* their privileges are paramount.

■ One issue remains to be resolved and that is whether or not Glazer, Steel, Inc., and Cross enjoy privileges under Civil Code Article 3237. Glazer and Steel, Inc. sold and delivered quantities of steel to G.O.S.C. during the months of April, May and July, 1976 as evidenced by the invoices filed in evidence and identified as Glazer 1 through 32 and Steel 1 through 7. It was stipulated by the parties that G.O.S.C. purchased these materials for the construction of the barges, GM 290 and GM 291. The FCNB, however, by so stipulating did not admit that the materials had, in fact, been used in the construction of the barges. FCNB contends that the burden is upon the privilege claimants to prove that the materials delivered to the builder were actually used in the construction. On the other hand Glazer asserts that once it is established that the material was delivered to the shipyard, the burden of going forward with the evidence shifts to the party disputing the validity of the privilege, citing Louisiana cases decided under the Public Works Act and the Federal Maritime Lien Act.

This writer has been unable to find any cases dealing with the burden of proof required to establish a privilege in favor of ship building material suppliers under Civil Code Article 3237. Since there is no statutory direction in point to aid in this decision, it is incumbent upon this court to formulate a policy vis a vis the required burden of proof.

It is clear that the Louisiana Legislature intended to bestow a preferred status upon those who furnished materials and labor in the construction of a ship. With this in mind it is necessary to examine the means by which such a status must be proven. If the burden of proof favored by the bank were the test it would be necessary for the material privilege claimant, by some means or other, to follow the materials from delivery into incorporation in the vessel guarding, all the while, against the migration of these materials in some other direction. A warehousing system would not work be-

cause following withdrawal from the warehouse there would be no way to insure that the materials were then taken to and built into the ship. What would be required would be a battery of watchmen to guard the stockpile and follow each piece of material to the job site, observing its transition into a part of the vessel. The impracticability of such a procedure is immediately obvious. Adding the labor costs of implementing it to the already high cost of materials would make the cost of construction prohibitive, since these labor costs would be passed on to the builder by the supplier.

The better view is that espoused by Glazer. Proof of delivery of materials, ordered for construction of a particular vessel, to the shipyard is all that can be required of the supplier. This establishes prima facie proof that the materials were, in fact, used in the construction. Once the prima facie case is established, the burden shifts to the party disputing the validity of the lien.

In this case the evidence adduced by Glazer and Steel, Inc. goes beyond the burden imposed by the above principle. These privilege claimants have shown, by the testimony of various witnesses that it is more probable than not that all of the steel delivered by them to G.O.S.C. for the construction of GM 290 and 291 was used in their construction.

■ The privilege claim of James P. Cross, Jr. is grounded upon invoices filed in evidence as Cross Exhibit # 1. These invoices total $27,021.59 and cover the period April thru September 1976. They all contain language similar to the following: "To bill you for the month of April for use of LS–108 Crane with operator". There was also placed in evidence as Cross Exhibit # 2 a document chronicling the work done by the equipment from May 24, 1976 through September 16, 1976. Figures appear opposite each date presumably indicating the hours worked. These figures are placed in columns indicating whether the work was done on Barge 1, Barge 2 or "Other". The operator testified, referring to a log which he kept, concerning the work performed.

Civil Code Article 3237 provides for a privilege in favor of: "... Those who have furnished materials and to workmen employed in the construction: ..." It is clear from the context in which it is used that "material" means the material which ultimately becomes part of the ship. Webster's dictionary defines "material" as the basic matter (as metal, wood, plastic, fiber) from which the whole or the greater part of something physical (as a machine, tool, building, fabric) is made". It is beyond the authority of this court to substitute the word "equipment" for the word "material" as it appears in the statute. To do so would be to extend the privilege granted by the statute to those never intended to be included by the lawmakers.

It is not contended, and the evidence is to the contrary, but Mr. Cross ever operated the crane in connection with the construction of the vessels. Whether or not he is subrogated to any rights which the operator would enjoy as a workman is a question that need not be answered. There is no segregation of charges and no evidence by which the court might segregate the charges for use of the equipment from those of wages to the operator. Of necessity, this court finds that Mr. Cross enjoys no privilege.

Prior to completion of GM 290 and GM 291, G.O.S.C. filed a proceeding under Chapter XI of the Bankruptcy Act. The appointed Receiver, Mr. William C. Sandoz, sought and secured authority to borrow funds, using his Certificate of Indebtedness, to complete the vessels. Upon completion the Receiver sold the vessels to Gulf Mississippi Marine for sums insufficient to pay off the Certificates, the secured indebtedness to FCNB and the privilege claimants.

Upon application the Receiver was ordered to pay the Certificates of Indebtedness in full. Out of the remaining funds, he was ordered to withhold sufficient monies to cover the privileged claims, pending the outcome of the instant controversy and to pay the balance over to FCNB.

The Receiver now holds sufficient funds to pay the claims of Glazer Steel Corporation and Steel, Inc. Upon his proper application an Order to do so will be granted.

Judgement in accordance with the foregoing will be signed upon submission. All costs of this proceeding to be paid by First City National Bank.